UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAROLINE HILL,

       Plaintiff,

v.                                 Case No:  2:14-cv-708-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

## ORDER

Plaintiff Caroline Hill seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    Issues on Appeal

Plaintiff raised three issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Larry J. Butler (the "ALJ") that Plaintiff does not have a severe mental impairment; (2) whether the ALJ erred by failing to consider Plaintiff's mental impairments, fibromyalgia, and carpal tunnel syndrome in the

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

assessment of Plaintiff's residual functional capacity ("RFC");[2] and (3) whether substantial evidence supports the ALJ's finding that Plaintiff's allegations of disabling limitations were not credible.

## II.    Procedural History and Summary of the ALJ Decision

On September 5, 2010, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of August 23, 2010.  Tr. 71-72, 128-130.  The claims initially were denied on January 4, 2011 and upon reconsideration on March 18, 2011.  Tr. 71-74, 95, 97-98, 100.  Plaintiff requested and received a hearing before the ALJ on September 19, 2012, during which she was represented by an attorney.  Tr. 31-70.  As of the date of the hearing, Plaintiff was forty-seven years old.  Tr. 34.  Plaintiff testified at the hearing.  Tr. 31-70.  The ALJ issued an unfavorable decision on May 6, 2013.  Tr. 25.

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.  Tr. 15.  At step one, the ALJ concluded that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date, August 23, 2010.  *Id.*  At step two, the ALJ found that Plaintiff "has the following severe impairments: atypical chest pain, cardiomyopathy, hypertension,

---

[2] In her first enumerated argument, Plaintiff argues that the ALJ erred in finding Plaintiff's mental impairments to be non-severe and in failing to consider her mental impairments in the evaluation of her RFC.  Doc. 13 at 7.  In her second enumerated argument, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's fibromyalgia and her carpal tunnel syndrome in the evaluation of Plaintiff's RFC.  *Id.* at 12.  For better organization and clarity, the Court will separately discuss whether the ALJ erred in finding Plaintiff's mental impairments to be non-severe and will discuss whether ALJ erred in omitting Plaintiff's mental impairments from his evaluation of Plaintiff's RFC together with Plaintiff's second enumerated argument.

cervical spinal stenosis, cervical radiculopathy, degenerative disc disease of the cervical and lumbar spine, neck and back pain, and obesity." Tr. 15. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 . . ." Tr. 18. The ALJ determined that Plaintiff had the RFC to perform a full range of light work.[3] Tr. 19. He found that Plaintiff is able to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. *Id.* He further found that Plaintiff can frequently balance; and she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. *Id.* He also found that Plaintiff can never climb ladders, ropes, and scaffolds. *Id.* The ALJ noted that "frequently" is defined as less than two-thirds of an eight hour workday and "occasionally" is defined as less than one-third of an eight hour workday. *Id.*

---

[3] The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and the limiting effects of the symptoms are not fully credible.   Tr. 20.   Next, the ALJ found that Plaintiff is capable of performing her past relevant work as cashier (general), Department of Transportation ("DOT") #211.462-010, light exertion and unskilled with an SVP of 2.   Tr. 24.   In comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff is able to perform it as generally performed.   *Id.*   Thus, the ALJ concluded that Plaintiff has not been disabled through the date of the decision.   *Id.* The Appeals Council denied Plaintiff's request for review of the ALJ's decision.   Tr. 1-7.   Accordingly, the ALJ's May 6, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on December 5, 2015.   Doc. 1. Both parties have consented to the jurisdiction of the magistrate judge, and this matter is now ripe for review.   Doc. 9.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'" *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir.2001)). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (*citing Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

## IV.   Analysis

### a.   *Whether substantial evidence supports the ALJ's finding that Plaintiff does not have a severe mental impairment*

Plaintiff argues that the ALJ erred in finding that Plaintiff's anxiety and depression were not severe mental impairments.   Doc. 13 at 7-10; Doc. 17 at 1-4. As a result, the ALJ also did not incorporate any mental limitations in evaluating Plaintiff's RFC.   Doc. 13 at 7.   The Commissioner responds that substantial evidence supports ALJ's decision to find Plaintiff's mental impairments non-severe. Doc. 14 at 5-6.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).   Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.   *Bowen*, 482 U.S. at 146 n.5.   If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three.   *See* 20 C.F.R. § 404.1520(a)(4).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."   20 C.F.R. § 404.1521(a), 416.921(a).   Basic work activities mean "the abilities and aptitudes necessary to do most jobs."   *Id.* §

- 7 -

404.1521(b), 416.921(b).   Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting.   *Id.* § 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case.   20 C.F.R. §§ 404.1520a, 416.920a; *see* Tr. 17-18.   Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.   20 C.F.R. §§ 404.1520a(c)(3), 416.920a.   The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more.   20 C.F.R §§ 404.1520a(c)(4), 416.920a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities.   20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).   The ALJ's decision must incorporate findings and conclusions based on the special technique.   20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).   Moreover, "a claimant whose claim is based on a mental condition does not have to show a 12-month period of impairment unmarred

by any symptom free interval." *Henning v. Colvin*, 2015 WL 248413, at *19 (N.D. Fla. 2015).

Here, the ALJ applied the proper legal standards in step two of the sequential evaluation process, and his findings are supported by substantial evidence. After determining that Plaintiff had severe impairments of atypical chest pain, cardiomyopathy, hypertension, cervical spinal stenosis, cervical radiculopathy, degenerative disc disease of the cervical and lumbar spine, neck and back pain, and obesity, the ALJ stated, "[t]he claimant's medically determinable mental impairment of major depression/mood disorder does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." Tr. 16. The ALJ found that Plaintiff's mental impairments were not severe so long as she complied with her medication and treatment regimen. Tr. 17.

The ALJ considered Plaintiff's mental impairments in his analysis of whether they qualified as severe impairments by examining both the medical records and opinion evidence. Tr. 16-17. The ALJ considered Plaintiff's records from the David Lawrence Center (the "DLC") where she first presented in August 17, 2010. Tr. 16-17, 414-15. Plaintiff was referred to the DLC by her treating chiropractor due to symptoms of depression. Tr. 414. During her evaluation, Plaintiff identified that she experienced extreme situational anxiety and stress in the previous two to three years and that she had worsening symptoms of anxiety, was socially isolated, experienced crying spells, memory loss, and had difficulty controlling ruminations in the past several months. *Id.* Tr. 415. During her mental status examination, her

behavior was appropriate; her intelligence, insight, and judgment were normal; and she appeared competent to consent to medications. *Id.* While she had some difficulty remaining quiet, she was able to redirect herself and listen to recommended changes in medication. *Id.* There was no evidence of psychosis, and she denied suicidal or homicidal and assaultive ideas. *Id.* She was diagnosed with mood disorder, not otherwise specified. *Id.* She was prescribed Lexapro and Clonazepam[4] and agreed to follow-up within the next four weeks. *Id.* The ALJ noted that "[s]he does not appear to have returned to the [DLC] for further treatment or medication management despite her allegedly disabling complaints from mental impairments." Tr. 17. The record does not contain any additional treatment notes from DLC. Moreover, when requested by the Social Security Administration to complete a Treating Source Mental Status report, the psychiatrist at the DLC returned an unsigned and blank report with a notation on the cover that read "[c]an not complete documents per Dr[.]" Tr. 17, 507-09.

The ALJ specifically discussed two treatment notes from Plaintiff's neurologist, Dr. Ron Howard, M.D., in 2010,[5] in which Dr. Howard noted that Plaintiff's mood, sleeping, and activities of daily living were okay while she was on Lexapro and that she was feeling better with Klonopin. Tr. 17, 447, 450. Next, the

---

[4] Clonazepam is a generic name for Klonopin, and is used to treat seizure disorders or panic disorder.   http://www.drugs.com/clonazepam.html

[5] The ALJ cited specific pages in the transcript for those treatment notes. While the month and days are not legible on the specific pages referenced by the ALJ, one of them is a duplicate of a treatment note in page 441 of the transcript, which shows a date of September 27, 2010.   Tr. 441.

ALJ considered a psychological evaluation of Plaintiff performed by David B. Rawlings, Ph.D., on December 6, 2010.  Tr. 17, 422-26.  During the evaluation, Plaintiff stated that she had been depressed for the previous three years and was seeking psychiatric consultation at DLC once per month.  Tr. 422-23.  Plaintiff reported memory problems: She reported misplacing her items, forgetting appointments, forgetting to take her medication on time, and repeating questions or stories.  Tr. 423.  Plaintiff acknowledged feelings of apathy, helplessness, and hopelessness and stated that she stays in her bedroom most of the day.  *Id.*  She reported weight loss due to a decline in her appetite.  *Id.*  Plaintiff denied homicidal or suicidal intent or ideation.  *Id.*  Plaintiff appeared slightly disheveled and her mood and affect were sullen, flat, and depressed.  *Id.*  She was emotionally liable throughout the interview, spent a considerable amount of time crying and blowing her nose, and used up an entire box of Kleenex.  Tr. 424-25.  Plaintiff's behavior suggested full cooperation and her speech was generally coherent and prosodic.  Tr. 423, 425.  Plaintiff was administered the Folstein MMSE, which yielded a score of 27 out of 30, which was determined to be a "mild impairment" compared to individuals of similar age and years of education.  *Id.*  She had slight problems with serial 7s.  *Id.*  Moreover, Plaintiff "was administered the Beck Depression Inventory-II, which yielded a score of (44) suggestive of severe depressive symptomology. Endorsements on the Beck Anxiety Inventory (17) suggested moderate levels of anxiety symptomatology."  *Id.*  She was diagnosed with major depression, superimposed on a dysthymia, sleep disturbance, and hypoactive sexual

desire disorder.   The report concluded: "Should this patient be granted benefits, she would be unlikely at this time to be able to manage her finances well because of her severe depression."   Tr. 426.

The ALJ also consulted the psychiatric review technique form completed by Dr. Nancy Dinwoodie on December 14, 2010 and accorded it great weight.   Tr. 17, 427-28.   Dr. Dinwoodie opined that Plaintiff had only a mild limitation in restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace.   Tr. 437.   She found no episodes of decompensation.   *Id.*   Dr. Dinwoodie determined Plaintiff's alleged mental impairments to be "not severe" and opined that Plaintiff was taking her pain medications and performing well with all of her activities of daily living.   Tr. 427, 439. The ALJ further discussed the opinion of a different state agency psychological consultant, Michael Zelenka, Ph.D., from March 18, 2011, who reviewed the evidence in the file at the time and reviewed and affirmed Dr. Dinwoodie's psychiatric review form.   Tr. 510.   The ALJ also gave this opinion great weight, as he found that this and Dr. Dinwoodie's opinion were supported by the totality of the medical evidence. Tr. 17.   Based on the foregoing discussion and "the totality of evidence," the ALJ found that Plaintiff "appears to be primarily limited by her physical difficulties and there is no indication of a severe [mental] impairment at this time."   Tr. 17.

Additionally, upon applying the special technique and considering the four broad functional areas for evaluating mental disorders, the ALJ found only mild limitations in Plaintiff's activities of daily living; social functioning; and

concentration, persistence or pace.   Tr. 17-18.   He found no episodes of decompensation of extended duration.   Tr. 18.   With regard to her activities of daily living, the ALJ found that they were primarily affected by her alleged physical impairments.   *Id.*   In determining her mild limitation in social functioning, the ALJ considered the Social Security Administration's Function Report completed by Plaintiff on October 29, 2010.   Tr. 18, 255-62.   In the report, Plaintiff stated that people visit her and she sits and talks with her guests; however, she dislikes being around people, including her children.   Tr. 259.   She stated that everyone makes her angry, even her husband, and she just wants to be alone.   Tr. 260.   The ALJ found that Plaintiff was "consistently noted as being cooperative, pleasant, and without abnormal behavior. . . . She spends time with others."   Tr. 18.   He also found that her "mental status examinations have essentially been within normal limits or showed only slight limitations."   *Id.*   The ALJ noted that the evidence of record did not indicate that Plaintiff had ever experienced an episode of decompensation.   *Id.* Based on these findings, the ALJ found that Plaintiff's mental impairments were non-severe.   Tr. 18.

Plaintiff first argues that the ALJ erred in relying upon the opinions of the state agency medical consultants, which were issued more than two years prior to the ALJ's decision, and in disregarding the "overwhelming weight of the medical evidence" when he found that Plaintiff's mental impairments were *de minimis* and trivial.   Doc. 13 at 7-10.   As stated, in his May 6, 2013 decision, the ALJ gave great weight to the opinions of two state agency psychological consultants, dated December

14, 2010 and March 18, 2011.   Tr. 17.   When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ; but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

Here, the ALJ gave great weight to the opinions because they were supported by the "totality of the medical evidence."   Tr. 17.   The Court has reviewed the record as a whole, taking into account evidence favorable as well as unfavorable to the decision, and agrees with the Commissioner that substantial evidence supports the ALJ's decision not to include Plaintiff's mental impairments as severe impairments. As discussed below, the record reveals that Plaintiff's anxiety and depression were controlled with medication.   On August 30, 2010, one week after the alleged onset

date, Dr. Howard noted that Dr. Robert Allen had prescribed Plaintiff Klonopin and Lexapro; Plaintiff had been taking Lexapro for nine days, but her mood had been about the same.[6]  Tr. 451.   On September 27, 2010, she reported to Dr. Howard that she was taking Lexapro but there was no improvement in her mood; however, she was able to perform her activities of daily living well.   Tr. 441, 450.   On a subsequent visit, the date of which cannot be determined due to the image of the treatment note, her mood was described as "okay," and she was able to perform her activities of daily living.   Tr. 447.

On November 8, 2010, Plaintiff was referred to Dr. Esham M. Kibria for an independent medical examination.   Tr. 417-18.   She reported a history of depression and that she was taking medications for it.     Tr. 418.   A mental status exam revealed that her "[w]ork related mental activities, understanding, memory, concentration, social interaction and adaptation [were] intact."   Tr. 418.   She was "[o]riented to time, place, and person. Historical events were related in a coherent organized manner. There was a normal fund of general information and [she had] normal speech pattern."   Tr. 418.   The impression diagnosis from this medical examination included depression.   Tr. 418.   On a December 20, 2010 visit with Dr. Howard, her mood was described as "fair."   Tr. 446.   Subsequently, on January 1, 2011, Dr. Howard noted that "[h]er mood has been ok," and Plaintiff was "sleeping fairly well."   Tr. 444.   On February 14, 2011, Dr. Howard also noted that "her mood

---

[6] On the previous visit, on August 2, 2010, Dr. Howard explained that Plaintiff's mood was "down," but she denied suicidal ideation.   Tr. 452.

has been good." Tr. 442.   During these visits with Dr. Howard and Dr. Allen, Plaintiff was using Lexapro for her depression.   *See* 417, 441-42, 444, 446-47, 450-51.

During the times when Plaintiff presented to her medical appointments tearful or distressed, the relevant medical records do not reveal that she was taking any medication for her anxiety and depression.   For instance, on June 2, 2011, Plaintiff presented to Donald D. Newman, M.D., at the Naples Medical Center, P.A.   Tr. 516. She was upset and very tearful, and reported that she needed a new pain management doctor because Dr. Howard was no longer providing pain management services to patients.   *Id.*   Dr. Newman prescribed Celexa to Plaintiff for her depression.   *Id.*   Dr.

On June 10, 2011, Plaintiff presented to Neuroscience and Spine Associates. Tr. 591-95.   Her mental status exam showed Plaintiff to be alert and oriented to person, place, and time.   Tr. 594.   Her language and cortical functions appeared intact.   *Id.*   Her spontaneous speech, repetition, naming, attention and concentration were intact.   *Id.*   Dr. F. Desmond Hussey, M.D., commented that "[s]he does have some depression for which she has been started on new medication, and she is going to bring that medication to us in the next visit. She has not picked it up from her primary care doctor."   Tr. 595.   Dr. Hussey suggested Plaintiff should try Cymbalta.   *Id.*   A list of the medications that Plaintiff was taking during this visit does not include Lexapro or any other medication for her depression as of the date of this visit.   *See* Tr. 593.

On July 11, 2011, she presented again to Dr. Hussey with symptoms of depression and anxiety.   Tr. 564-67.   Again, a list of the medications that Plaintiff was taking during this visit does not include Lexapro or any other medication for her depression as of the date of this visit.   *Id.*   On August 9, 2011, Dr. Hussey discussed with Plaintiff her depressive issues and recommended starting her on Wellbutrin at 150 milligrams for a week, and then increasing her dosage.   Tr. 563.   On December 5, 2011, Dr. Hussey noted that Plaintiff's depression was "better."   Tr. 544.   A review of the medical record from this visit does not list which medications Plaintiff was taking at the time.   *See* Tr. 544-47.

Alternatively, when Plaintiff was taking her prescribed medication, she presented well; and her doctors opined that the medications were helping her.   On February 1, 2012, Plaintiff's symptomology for depression was present; but a mental status exam with Dr. Hussey showed her to be alert and oriented to person, place, and time.   Tr. 536-39.   Her language and cortical functions appeared intact. Tr. 538. Her spontaneous speech, repetition, naming, attention, and concentration were intact.   *Id.*   During this visit, she was taking Lexapro.   *Id.*   On February 29, 2012, Dr. Hussey noted that Plaintiff's "depression is stable. The medication does help her." Tr. 535.   On March 28, 2012, Dr. Hussey noted Plaintiff's history of depression; however, and stated that "[s]he is stable on medications. They seem to afford her benefits."   Tr. 569, 571-72.   On April 25, 2012, Dr. Hussey noted that Plaintiff's depression had been her main issue, so he increased her medication dosage.   Tr. 580. The following month, during her May 23, 2012 visit with Dr. Hussey, a review of the

checked-off symptoms shows "negative" for depression and anxiety.   Tr. 573.   On June 13, 2012, Plaintiff appeared at the North Collier Hospital due to a fall six days earlier.   Tr. 527.   Her general appearance was pleasant, alert, and cooperative.   Tr. 528.   Thus, substantial evidence supports the finding of the ALJ that Plaintiff's depression seemed to be controlled with medications.

Plaintiff next argues that the ALJ failed to cite any evidence in support of his finding that Plaintiff has only mild limitations in activities of daily living and sustaining concentration, persistence, or pace.   Doc. 13 at 7-10; Doc. 17 at 1-4.   As previously stated, with regard to her activities of daily living, the ALJ found that they were primarily affected by her alleged physical impairments.   Tr. 17.   While the ALJ did not elaborate any further with respect to Plaintiff's activities of daily living in the same paragraph, his opinion specifically referenced two treatment notes from Dr. Howard that Plaintiff was able to perform her activities of daily living.   Tr. 17, 447, 450.   Plaintiff also argues that the ALJ erred in evaluating Plaintiff's social functioning when he ignored Plaintiff's hearing testimony but relied on a single disability report completed by Plaintiff in October 2010, more than two and a half years before the ALJ issued his opinion.   Doc. 13 at 8-9.   The Commissioner responds, and the Court agrees, that the regulations permit the ALJ to consider Plaintiff's function report in evaluating her mental impairments.   Doc. 14. at 9.   *See* 20 C.F.R. 404.1529(c)(4).   Moreover, it is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing

*Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

The ALJ's findings at step two are consistent with the medical records and the state agency's psychologists' opinions, and are therefore supported by substantial evidence. Additionally, this circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*, *see* 20 C.F.R. § 404.1520(a)(4). As the Eleventh Circuit has stated, "[n]othing requires the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 832 F. App'x 823, 825 (11th Cir. 2010). Thus, even if the ALJ committed an error at step two, it is a harmless error, because the ALJ complied with the sequential evaluation process and proceeded to step three.[7]

---

[7] In her second enumerated argument, in a very brief summary, Plaintiff argues, "the ALJ failed to explain whether [Plaintiff's carpal tunnel syndrome] was severe or not severe at step two and failed to consider the impairment when formulating the RFC." Doc. 13 at 12. Pursuant to this circuit's precedent that nothing requires the ALJ to identify every severe impairment at step two, and the Court's finding that the ALJ considered Plaintiff's carpal tunnel syndrome in the RFC analysis, as will be discussed *infra*, the Court finds the ALJ's omission of Plaintiff's carpal tunnel syndrome as a severe impairment to be a harmless error. *See e.g. Jamison*, 814 F.2d at 588.

> b.   *Whether the ALJ erred by failing to consider Plaintiff's mental impairments, fibromyalgia and carpal tunnel syndrome in the assessment of Plaintiff's RFC*

Plaintiff argues that the ALJ erred in failing to incorporate Plaintiff's medically determinable impairments of anxiety, depression, and carpal tunnel syndrome in her RFC.   Doc. 13 at 7, 11-12.   Plaintiff also argues that she was diagnosed with fibromyalgia, which is a recognized medically determinable impairment, pursuant to Social Security Ruling ("SSR") 12-2p, and the ALJ erred in failing to incorporate this into Plaintiff's RFC.   Doc. 13 at 10-12.   The Commissioner argues that while the records indicate that Plaintiff was diagnosed with these impairments, diagnosis alone does not prove the severity or limiting effects of these impairments.   Doc. 14 at 8-11.   According to the Commissioner, Plaintiff has not advanced any evidence to show her impairments resulted in any restrictions affecting her ability to work in excess of her RFC.   *Id.*

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   Tr. 18-19; 20 C.F.R. §§ 404.1520(e), 416.920(e).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The claimant's age, education and work experience, and whether she can return to her past relevant work are considered in determining her

RFC. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).  The RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).  The ALJ also "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

With respect to Plaintiff's mental impairments, despite the objective evidence indicating that Plaintiff suffers from depression and anxiety, the ALJ failed to discuss these impairments and how they affect Plaintiff's RFC.  While the ALJ concluded that these impairments were non-severe at step two, the ALJ still was required to evaluate how the impairments affect Plaintiff's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson*, 779 F.2d at 623.  Surprisingly, the ALJ acknowledges that the mental RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B"; yet he fails to do so.[8]  Tr. 18.  The ALJ merely makes a mention of Plaintiff's

---

[8] The ALJ concludes his step two analysis as follows: "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of

testimony regarding her depression that "[s]he reported isolating herself in her room and only coming out for meals or to use the bathroom."  Tr. 20.  The ALJ failed to include any well-articulated findings whatsoever as to how Plaintiff's mental impairments may impact her RFC.  This utter lack of discussion renders the Court unable to determine whether the ALJ even considered the limiting effects of these impairments.  *Gibson*, 779 F.2d at 623.

Similarly, despite the objective evidence that Plaintiff was diagnosed with fibromyalgia, as the Commissioner concedes, the ALJ failed to discuss this impairment and how it affects Plaintiff's RFC.  Doc. 14 at 9; Tr. 15-24, 536, 540, 550, 571, 579.  SSR 12-2p provides guidance on how to evaluate fibromyalgia in disability claims.  2012 WL 3104869.[9]  Relating to the RFC assessment, Social Security Ruling 12-2p provides:  "For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"  *Id.* at *6.  Plaintiff testified that she quit her job due primarily to her pain.  Tr. 37-38, 40-45, 51.  Dr. Hussey diagnosed Plaintiff with fibromyalgia after a physical exam showed that Plaintiff had "fibromyalgia tender points in the upper back, neck, and shoulders."  Tr. 566.  As listed in SSR 12-2p, trigger points are one of the

---

Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." Tr. 18.  It is unclear to the Court whether the last sentence in this paragraph is an attempt by the ALJ to incorporate his step two findings in the RFC analysis. The Court, however, declines to make this assumption.

[9] SSRs are binding on all components of the Social Security Administration. *See* 20 C.F.R. 402.35(b)(1).

paradigmatic symptoms frequently associated with fibromyalgia. *Id.* It has been recognized that "[g]iven the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010). Because of the nature of this condition, the Court is unable to accept the Commissioner's argument in this case that diagnosis alone does not does not speak to whether the condition affects a claimant's ability to work. Doc. 14 at 10. There is no discussion relating to Plaintiff's fibromyalgia in the ALJ's opinion, thus the Court is unable to determine whether the ALJ applied SSR 12-2p. The complete lack of discussion renders the Court unable to determine whether the impairments were considered singly and in combination, and may have an effect on Plaintiff's credibility determination, as will be discussed *infra*. *Gibson*, 779 F.2d at 623.

Contrary to Plaintiff's assertions, however, the ALJ considered Plaintiff's carpal tunnel syndrome in evaluating Plaintiff's RFC. Evidence in the record regarding Plaintiff's carpal tunnel syndrome includes Plaintiff's testimony, medical treatment notes, and EMG and nerve studies. Plaintiff testified that her hands go numb, and she drops things all the time. Tr. 45. She testified that she is losing the motor function in her right hand. *Id.* Dr. Hussey acknowledged that Plaintiff "does have some carpal tunnel on the right [hand]." Tr. 532; *see also* Tr. 567. An EMG and nerve study in 2011 indicated that she had "very mild median sensory mononeuropathies bilaterally, consistent with compression of the median nerve at

the wrist (carpal tunnel syndrome)."  Tr. 614.   Similarly, an EMG and nerve study in February 2012, the findings were exactly the same, except, in addition, there were "no findings to suggest a radial palsy on the right."  Tr. 603.   The ALJ specifically referenced Plaintiff's testimony that "she could not even carry a gallon of milk," that "her hands and wrists go numb[, and that] she drops things and is losing motor function in the right hand."  Tr. 20.   He also noted that "she reported tenderness and numbness and tingling in the arms" to Dr. Hussey.  Tr. 21.   The ALJ also considered and referred to both findings from Plaintiff's EMG and nerve studies in June 2011 and February 2012.  Tr. 21-22.   The ALJ concluded that Plaintiff's mild findings do not support her testimony that she is unable to hold objects with the right arm.   Tr. 22.   Thus, contrary to Plaintiff's assertions, the ALJ considered and specifically discussed the evidence of record with regard to Plaintiff's carpal tunnel syndrome, and this discussion amounted to more than "a rote recitation of [Plaintiff's] medical records," as Plaintiff suggests.   Doc. 13 at 12.

The ALJ's failure to include any well-articulated findings as to how Plaintiff's mental impairments and fibromyalgia may impact her RFC and the lack of discussion concerning these impairments renders the Court unable to determine whether the ALJ considered their limiting and combined effects.   Remand therefore is warranted as to these issues.   On remand, the ALJ should address and explain the limiting effects, if any, of Plaintiff's mental impairments and fibromyalgia.   The ALJ should consider these impairments singularly and in combination to determine disability. *See Gibson*, 779 F. 2d at 623.   If the ALJ determines on remand that Plaintiff's

mental impairments and fibromyalgia do not affect her RFC, the ALJ should include the relevant evidence supporting that conclusion, as required by the regulations. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).   Because he failed to do so here, the Court finds that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

>        c.    *Whether substantial evidence supports the ALJ's finding that Plaintiff's allegations of disabling limitations were not credible.*

Plaintiff next argues that the ALJ's credibility determination is not supported by substantial evidence.   Doc. 13 at 12-16.   While the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."   Tr. 20.

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   The pain standard "is fully consistent with the Secretary's regulations."   *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ

must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. § 404.1529(c).   "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Because it is unclear whether the ALJ considered all of the record evidence, including the subjective nature of fibromyalgia, the Court finds that reconsideration on remand is appropriate.   Accordingly, the Court will direct the Commissioner to reevaluate Plaintiff's credibility when the Commissioner considers all of the record evidence.

## V.    CONCLUSION

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards when he failed to make a specific finding as to whether Plaintiff's mental impairments and fibromyalgia significantly limit Plaintiff's ability to perform her PRW and affect her credibility.   Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence.

Plaintiff requests that the Court remand the case to an administrative law judge ("ALJ") other than ALJ Larry Butler, as ALJ Butler is subject to ongoing disciplinary proceedings by the Commissioner, some of which allegations concern cases in which Plaintiff's counsel was involved.   Doc. 13 at 16-18.   In order to avoid any appearance or risk of actual bias or prejudgment, the case should be reheard by a different ALJ.   *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

      A.  sufficiently explain the effects of Plaintiff's mental impairments and fibromyalgia on her RFC, if any;

      B.  reevaluate Plaintiff's credibility; and

      C.  make any further determinations consistent with this Opinion and Order, or in the interests of justice.

2.     The Commissioner shall reassign the case for rehearing to an Administrative Law Judge other than Administrative Law Judge Larry Butler.

3.     The Clerk of Court is directed to enter judgment accordingly, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 31st day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record